**Deshaun McCOULLUGH,**
**Plaintiff–Appellant,**

v.

**Amy MAKI, Defendant–Appellee.**

**No. 03–2232.**

United States Court of Appeals,
Sixth Circuit.

June 10, 2004.

Deshaun McCoullugh, Baraga, MI, pro se.

Christine M. Campbell, Asst. Atty. General, Office of the Attorney General, Corrections Division, H. Steven Langschwager, Office of the Attorney General, Habeas Corpus Division, Lansing, MI, for Defendant–Appellee.

Before MARTIN and SUTTON, Circuit Judges; and HOLSCHUH, District Judge.*

* The Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation.

*ORDER*

Deshaun McCoullugh, a pro se Michigan prisoner, appeals a district court judgment dismissing his civil rights complaint filed pursuant to 42 U.S.C. § 1983. This case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

Seeking monetary and injunctive relief, McCoullugh sued Amy Maki, classification director at the Baraga Maximum Correctional Facility in Baraga, Michigan. McCoullugh alleged that on March 3, 2002, he requested a dual work/school assignment. In his request, McCoullugh indicated that he felt that Maki had problems giving jobs to black men who did not have a GED or high school diploma. On March 5, 2002, Maki responded that she had given jobs to a lot of "Negroes" who did not have a GED or high school diploma. McCoullugh was informed to seek a reclassification from his case manager.

McCoullugh subsequently requested a reclassification from his case manager. However, the request was denied. On March 8, 2002, McCoullugh wrote "a grievance on Maki for racial discrimination." McCoullugh alleges that on March 19, 2002, he was on a weight lifting detail when he encountered Maki. McCoullugh asked if Maki had received his request and Maki asked McCoullugh his name. McCoullugh informed Maki of his identity. Maki told McCoullugh that she had received his grievance and stated "this won't get you a job you black bastard!"

Upon de novo review of a magistrate judge's report, the district court granted summary judgment to Maki. On appeal,

McCoullugh argues that genuine issues of fact prevent the grant of summary judgment to Maki. McCoullugh asserts that Maki called him a Negro and black bastard. In addition, McCoullugh states that he has been discriminated against because of his race.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In applying the summary judgment standard, the court must review all materials supplied, including all pleadings, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the evidence is merely colorable or is not significantly probative, then summary judgment may be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(c); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party must do more than show that there is a metaphysical doubt as to the material issue. *See Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

McCoullugh alleges that Maki discriminated against him because of his race by denying his request for a dual school/work assignment and notes that she used the term "Negroes" in support of his claim. He also asserts that Maki called him a "black bastard" on one occasion. Maki denies calling McCoullugh a "black bastard."

Michigan Department of Corrections policy provides that a prisoner who has not completed a GED may be approved by the warden for assignment to work and to school. Policy Directive 05.02.112. A prisoner cannot be assigned to a work assignment without a high school diploma, GED, or satisfactory progress toward obtaining a GED certificate. Prisoners housed in administrative segregation are not eligible for work assignments. McCoullugh does not have a GED or a high school diploma.

Policy Directive 05.01.100P provides, in part:

> All employable prisoners shall be classified to a work assignment unless assigned to a school in accordance with PD 05.02.112 "Education Programs for Prisoners". Prisoners shall be assigned to only one work assignment at a time. Prisoners who have not completed required General Education Development (GED) programming may be assigned to a combination of work and school as approved by the Warden consistent with PD 05.02.112; however, a Warden shall not prohibit a prisoner from being assigned to a combination assignment *solely* because the prisoner has not completed required GED programming.

Policy Directive 05.02.112BB provides, in part:

Unless exempt pursuant to Paragraphs N and O, prisoners shall be required to have a documented high school diploma or GED certificate, or be enrolled in and maintaining satisfactory progress in appropriate ABE and GED preparation classes, to be assigned to a non-MSI work assignment. Failure to maintain satisfactory progress shall result in termination from the work assignment. Priority for work assignments may be given to prisoners who possess a documented high school diploma or GED certificate.

The response to McCoullugh's grievance explained:

To be eligible for a dual assignment, you need 3 months in school with good reports, if you have met this, you may kite a reclass. You will then be listed, but prisoners with a ged will receive first priority, and institutional need is a factor. Per 05.02.112BB., you must maintain satisfactory progress. 90 days give appropriate time fro evaluation. Priority for work assignments goes for prisoners with a high school diploma or ged. [Typographical errors in original.]

As of April 22, 2002, McCoullugh was listed for dual work and school assignment.

McCoullugh arrived at the prison on June 12, 2001, for placement in administrative segregation. His cell study was terminated on September 18, 2001, because McCoullugh failed half his tests and then quit. McCoullugh again requested cell study on November 15, 2001. He was released into the prison general population on November 27, 2001, and was placed on school assignment on December 10, 2001. He was transferred from Unit 5 to Unit 6 in February 2002. Unit 5 is a transition unit where prisoners can go to school in the unit. Unit 6 prisoners go to school at the prison school. There does not exist a smooth transition in transferring prisoners from the Unit 5 school to the prison school. A prisoner who transfers between these units may be placed on a waiting list. After receiving positive reports, Maki placed McCoullugh on the school/work assignment list in April 2002. McCoullugh again received a positive report on May 28, 2002. On August 27, 2002, McCoullugh's school detail was cancelled because he was transferred to Unit 5 where he had to wait for a position to open in the Unit 5 school. School detail in Unit 6 was cancelled. McCoullugh was reclassified on September 30, 2002, to administrative segregation. His detail was cancelled on November 1, 2002. After requesting in-cell study on November 19, 2002, McCoullugh was placed on in-cell study December 2, 2002.

McCoullugh alleges that he was discriminated against in March of 2002 because he was not immediately assigned to a dual school/work detail when he made his request. McCoullugh's request for an assignment is unreasonable given the applicable policy directives. Under the directives, McCoullugh had to establish a record of satisfactory school performance before he was considered eligible for dual school/work status. McCoullugh had not shown that he had a record of satisfactory performance prior to March 2002. Maki determined that McCoullugh had established a record as of April 22, 2002. Thus, McCoullugh failed to show that Maki discriminated against him by failing to give him a school/work detail in March 2002.

The use of racially discriminatory language, it is true, may provide some evidence of a discriminatory purpose when that language is coupled with some additional harassment or constitutional violation. But in this case, prison policy prohibited Maki from giving McCoullugh a work assignment in March of 2002. Once McCoullugh established an educational

record as required by prison policy, Maki gave him a work assignment.

Accordingly, we affirm the district court's judgment. Rule 34(j)(2)(C), Rules of the Sixth Circuit.